UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 03-cr-10030-MOORE/SNOW

Case No. 4:02-cr-10001-KMM

FILED BY_____D.C.

MAR 3 1 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES OF AMERICA,

  Plaintiff,

v.

PEDRO ARRIETA,

  Defendant.

## MOTION FOR SENTENCE REDUCTION
## UNDER 18 U.S.C. §3582(c)(2)

COMES NOW, Pedro Arrieta ("Arrieta"), pro se, and respectfully submits his Motion for Sentence Reduction Under 18 U.S.C. §3582(c)(2), pursuant to Amendment 821 to the United States Sentencing Guidelines ("USSG"), which went into effect on November 1, 2023, and applies retroactively.

INTRODUCTION

Section 3582 sets out the order in which this Court should analyze a defendant's entitlement to a sentencing reduction.

First, the Court must determine whether Arrieta has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission ("Commission"). 18 U.S.C. §3582(c)(2).

Second, the Court should "consider[] the factors set forth

in section 3553(a) to the extent they are applicable." Id.

Last, the Court should determine whether Arrieta poses a
"danger to the safety of any other person or to the community."
§1B1.10 App. n. 1.(a)(B)(ii); see also 18 U.S.C. §3142(g) (same).

## I. Procedural History

### a. Factual Basis of Events

On or about January 9, 2002, a federal grand jury sitting
in the Southern District of Florida returned an indictment
charging Arrieta with 22 Counts of Alien Smuggling, in violation
of 8 U.S.C. §1324(a)(2)(B)(iii); and One Count of conspiracy
to defraud the United States, in violation of 18 U.S.C. §371,
via Docket Number 02 10001 cr PAINE. At trial, on May 24, 2002,
the jury convicted Arrieta of all 23 counts. (Dkt. 77, 4:02-
cr-10001-KMM ("Case 1")).

On October 3, 2002, the Honorable James C. Paine sentenced
Arrieta to 60 months imprisonment as to each count, to run
concurrently, followed by three years supervised release (as
to each count to be served concurrently), and $2,300 in special
assessments. (Dkt. 109b, Case 1). Arrieta was ordered to self-
surrender on November 5, 2002 (Dkt. 110), but failed to do
so.

On or about December 4, 2002, Judge Paine issued a bench
warrant for Arrieta's arrest. (Dkt. 154, Case 1; see also Docket
Number 4:03-cr-10030-KMM ("Case 2"), Dkt. 2, another arrest
warrant issued on August 14, 2003.) On or about January 30,
2003, Judge Paine granted the Government's Motion to Revoke

2

Arrieta's appearance bonds. (Dkt. 181, Case 1.) On August 14, 2003, an indictment was returned charging Arrieta with a single count of failing to surrender for service of his sentence in violation of 18 U.S.C. §3146(a)(2). (Dkt. 1, Case 2.)

On February 16, 2005, Arrieta's case was placed in fugitive status. (Dkt. 5, Case 2.)

On November 12, 2022, Arrieta was arrested pursuant to the arrest warrant. On November 15, 2022, he made his initial appearance before the Honorable Magistrate Lurana S. Snow in Key West. (Dkt. 231, (Case 1); Dkt. 7 (Case 2)). On January 9, 2023, he had his plea of guilty entered for the single count of failing to appear. (Dkt. 21, Case 2.)

On February 21, 2023, the Honorable K. Michael Moore sentenced Arrieta to 12 months and one day as to Count One of the indictment, followed by three years of supervised release, and a $100.00 special assessment. (Dkt.s 28-29, Case 2.) Pursuant to §5G1.2(a), the sentence was imposed consecutive to the term from Docket Number 02-10001-cr-PAINE. (See "Judgement in a Criminal Case," pg. 2 (Dkt. 29)).

b. Offense and Criminal History Computations

(i) Offense Level Computation

Per the Guidelines Manual under which Arrieta was sentenced, for a violation of 18 U.S.C. §3146(a)(2), the applicable guideline, found in §2J1.6, established a base offense level of 11. (See Presentence Investigation Report ("PSI"), pg. 7, ¶13 (Dkt.s 26-27)).

3

Arrieta clearly demonstrated acceptance of responsibility for the offense, being sincerely remorseful as reflected in the letter he provided to the Court. (PSI, pg. 6, ¶12). His offense level was decreased by two levels pursuant to §3E1.1(a). Id. pg. 7, ¶20. Consequently his total offense level for Case 2 was 9. Id. at ¶21.

(ii) Adult Criminal Conviction

The base offense level for Case 2 was increased by three criminal history points, the PSI citing Case 1. Id. pg. 8, ¶23.

(iii) Criminal History Computation

Accordingly, Arrieta had a subtotal of three criminal history points. And, for the purpose of this filing, his PSI report states that he

> committed the instant offense while under a criminal justice sentence in Case Number 4:02-10001-cr-005; therefore, two points are added, §4A1.1(d). [Arrieta] has a total of five criminal history points. According to the Sentencing Table in Chapter 5, Part A, five criminal history points establish a criminal history category of III.

Id. pg. 9, ¶25.

(iv) Sentencing Table

Based upon a total offense level of 9 and a criminal history category (CHC) of III, the guideline imprisonment range at the time of Arrieta's sentencing was, in Zone B, 8-14 months. This is the sentencing range upon which his term of imprisonment from Case 2 is based, a "range that has subsequently been lowered

4

by the Sentencing Commission...." 28 U.S.C. 994(o), infra.

## II. Standard of Review

### a. Generally

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." McMillan v. United States, 257 F. App'x 477, 479 (3d Cir. 2007); see also Dillon v. United States, 560 U.S. 817, 819, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed.")

### b. Specifically

> The court may not modify a term of imprisonment once it has been imposed except that--
> ...
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)[1], upon motion of the defendant or the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable.

18 U.S.C. §3582(c)(2).

The statute imposes certain restrictions on the district court's discretion, allowing a sentence reduction only

---

[1] This statute provides that the Commission "periodically shall review and revise, in consideration of comments and data coming to its attention, the guidelines promulgated pursuant to the provisions of this section." 28 U.S.C. §994(o). It further directs the Commission to "consult with authorities on, and individual and institutional representatives of, various aspects of the Federal criminal justice system." 28 U.S.C. §994(o). It also provides that various representatives of the Federal criminal justice system shall submit their observations, comments, and questions to the Commission. 28 U.S.C. §994(o).

> if such a reduction is consistent with
> applicable policy statements issued by the
> Sentencing Commission.

or if it was subsequently made retroactive. 28 U.S.C. §994(n).

Also,

> if the Commission reduces the term of
> imprisonment recommended in the guidelines
> applicable to a particular offense or
> category of offenses, it shall specify in what
> circumstances and by what amount the
> sentences of prisoners serving terms of
> imprisonment for the offense may be reduced.

Id.

The Supreme Court has concluded that proceedings under section
3582(c)(2) are not governed by United States v. Booker, 543
U.S. 220 (2005), and this policy statement remains binding
on courts in such proceedings. See Dillon v. United States,
560 U.S. 817 (2010). §1B1.10, Application Note 9.

In sum, this Court may modify a defendant's term of imprisonment
once it has been imposed when the Commission makes an amendment
to the guidelines retroactive and the amended guideline was
part of the basis of the defendant's guideline range.

There are two points of consideration--1) offender eligibility
and 2) court discretion. See United States v. Hamilton, 715
F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant,
as the §3582(c)(2) movant, bears the burden of establishing
that" compassionate release is warranted, but that, even where
a defendant satisfies this burden, "the district court still
retains discretion to determine whether a sentence reduction
is warranted"). Regarding the first point--

6

OFFENDER ELIGIBILITY

1. Amendment 821

Amendment 821 is titled the "Criminal History" amendment. It addresses three areas applicable to the Sentencing Guidelines. These areas, notated as Parts A., B. and C., cover offender-specific circumstances that involve:

A. Status Points (§4A1.1),
B. Zero-Point Offenders (§4A1, §4C1.1, §5C1.1), and
C. Marijuana Possession Priors (§4A1.3).

In August 2023, the Commission voted to allow retroactive application of Parts A and B, extending these reductions to currently incarcerated individuals with a 3-month delay in implementation (meaning orders must have an effective date no earlier than February 1, 2024). USSG §1B1.10(d) (Amendment 821 (Parts A and B, subpart 1) included among list of retroactive amendments.)

The listing of an amendment in subsection (d) reflects policy determinations by the Commission that a reduced guideline range is sufficient to achieve the purposes of sentencing and that, in the sound discretion of the Court, a reduction in the term of imprisonment may be appropriate for previously sentenced, qualified defendants. Id.

> In dtermining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. §3582(c)(2) and this policy statement is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced.

§1B1.10(b)(1).

This request will present arguments in support of Parts A and B.

**AMENDMENT 821, PART A**

A. IMPACT

The impact of status points has been limited.

Commission research found that an offenders criminal history guideline calculation is strongly associated with the likelihood of future recidivism by the defendant but that status points only minimally improve the predictive value of the criminal history score--and less than the original Commission may have expected. See U.S. SENT'G COMM'N, Recidivism of Federal Offenders Released in 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010 (criminal history guideline calculation's strong association with likelihood of recidivism), and compare with results found at U.S. SENT'G COMM'N, REVISTING STATUS POINTS (2022), available at https://www.ussc.gov/research/research-reports/revisiting-status-points (status points lack of predictive value).

Relevant, the amendment retains status points in a more targeted fashion for offenders with seven or more criminal history points. The Commission found applying status points in this fashion continues to serve the broader purpose of sentencing while also addressing some of the other concerns raised regarding the impact of status points.

The Commission's targeted approach clearly differentiates seven-or-more status-point offenders from those with six or

less. Such a differentiation doesn't just help specify the circumstances and amount by which a defendant's status points may be reduced, but too it implicates §3553(a) considerations.

## B. CRIMINAL JUSTICE SENTENCE

Whether defendants are six-or-less or seven-or-more criminal-history-point offenders, the overall impact of this amendment is narrowed further, limited to those who received "additional criminal history points...for the fact of having committed the instant offense while under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status []." §1B1.10, Application Note 7.

Arrieta is such a defendant.

Prior to Amendment 821's effective date, a Memorandum of May 15, 2023, issued by the Office of Research and Data and the Office of General Counsel of United States Sentencing Commission ("Memorandum") explained--

> Part A of the 2023 Criminal History Amendment
> reduces the impact of "status points" for offenders
> who committed the instant offense while under
> any criminal justice sentence.... As amended,
> the "status points" provision under redesignated
> subsection (e) applies only to offenders with
> more serious criminal histories under the
> guidelines. "Status points" will no longer
> apply to offenders with less serious criminal
> histories - six or fewer criminal history
> points under subsections (a) through (d) -
> even if the instant offense was committed while
> the offender was under a criminal justice
> sentence. https://www.ussc.gov/sites/default/
> files/pdf/research-and-publications/retroactivity-
> analyses/2023-criminal-history-amendment/
> 202305-Crim-Hist-Amdt-Retro.pdf

Beyond this targeted approach, the Commission also chose to not include any eligibility limitations under Part A of the Amendment based on crime type, violence, or weapons. For §3553(a) considerations, it's informative that such factors were only included for subpart 1 of Part B of the amendment. The inclusion of eligibility limitations for one part and not for the other is indicative of a greater standard of review and a lesser, respectively. Though the Court may consider such factors as part of its §3553(a) assessment when determining whether to grant a sentence reduction, see §1B1.10, comment (n.1(B)(ii)), the inclusion or exclusion of eligibility factors provides helpful guidance for how much weight such factors should be attributed during the assessment. This ensures that, for Part A offenders, eligibility factors not included don't usurp the Commission's data-driven reasons for amending Part A.

## III. Retroactive Recalculation

The amended guideline range that would have been applicable to Arrieta if Amendment 821, Part A, had been in effect "at the time [he] was sentenced," §1B1.10(b)(1), would be 4-10 months, pursuant to the following:

For Case 2, Arrieta's failure-to-appear violation established a base-offense level of 11 (see This Brief, pg. 3.) His acceptance of responsibility decreased this by two levels, resulting in a total offense level of 9. Id.

For Case 1, the alien-smuggling case, he received a 60-

month term of imprisonment, the term for which he failed to surrender for service. This conviction resulted in three criminal history, or "status points." See PSI, pg. 8, ¶23.

If we calculate forward step by step, these three points had the legal effect of increasing Arrieta's criminal history category (CHC) I, with a sentencing range of 4-10 months, to a CHC II, 6-12 months. See USSG Chapter 5, Part A, Sentencing Table ("Sentencing Table").

Then two additional criminal points were added due to Arrieta being "under a criminal justice sentence." Id. pg. 9, ¶25. This increased his CHC further, from II to III, resulting in a sentencing range of 8-14 months.[2] See Sentencing Table.

DISCUSSION

Pursuant to 28 U.S.C. §994(u), the Commission "specif[ied] in what circumstances and by what amount the sentence[] of [Arrieta]...may be reduced." Due to Commission data demonstrating that status points minimally improve the criminal history score's successful prediction of rearrest--by just 0.2%--"[t]he Amendment limits the overall criminal history impact of 'status points.'"

As revised, the "status points" provision under redesignated subsection (e) applies only to offenders with more serious criminal histories under the guidelines by requiring that an offender have seven or more criminal history points under subsections

---

[2] Arrieta was sentenced to 12 months, 1 day, the 67% point of the total range. (Dkt.'s 28-29, Case 2)

(a) through (d) [of §4A1.1] in addition to having been under
a criminal justice sentence at the time of the instant offense."
§4A1.1(e) (as revised)

Arrieta does not fall into the "more serious criminal" category.

But "'status points' will no longer apply to offenders with
less serious criminal histories - six or fewer criminal history
points under subsections (a) through (d) - even if the instant
offense was committed while the offender was under a criminal
justice sentence." (Memorandum, This Brief, pg. 9.) See also
§1B1.10, Application Note 8 ("Offenders with six or fewer criminal
history points under subsections (a) through (d) will no longer
receive 'status points.'")

Consequently, Arrieta being a "less serious criminal," he
no longer receives status points. Effectively, for Case 2,
this has the legal effect of decreasing his guideline range
to a CHC I (4-10 months).

Regarding the Court's second point for consideration--

COURT'S DISCRETION

## IV. 18 U.S.C. §3553(a) Factors

Once offender eligibility is determined, then the Court
should consider "the factors set forth in [18 U.S.C. §] 3553(a)...."
18 U.S.C. §3582(c)(2).

"In particular, the district court must consider: the nature
and circumstances of the offense and the history and characteristics
of the defendant; the need for the sentence to afford adequate
deterrence, protect the public from the defendant's further

crimes, and provide the defendant with needed education or treatment; the kinds of sentence and applicable guideline range under the Sentencing Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities between similarly situated defendants; and the need to provide restitution to any victims of the offense. See 18 U.S.C. §3553(a)(1), (2)(B)(D), (4)-(7), 3582(c)(2). The sentence must also reflect the seriousness of the offense, promote justice for the law, and provide just punishment for the offense. See §3553(a)(2)(A)." United States v. Lawson, No. 22-10851, 2023 U.S. App. LEXIS 1337, 2023 WL 316143, at *2 (11th Cir. Jan. 19, 2023)

Pursuant to Amendment 821, Application Note 1(a)(B), "Factors for Consideration," the Commission's commentary provides that (i) "The court shall consider the factors set forth in 18 U.S.C. §3553(a) in determining: (I) whether a reduction in the defendant's term of imprisonment is warranted; and (II) the extent of such reduction...."; (ii) "The court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment in determining: (I) whether such a reduction is warranted; and (II) the extent of such reduction...."; and (iii) "The court may consider post-sentencing conduct of the defendant that occurred after imposition of the term of imprisonment in determining: (I) whether a reduction in the defendant's term of imprisonment is warranted; and (II) the extent of such reduction...." §1B1.10 Application Note 1(a)(B)(i)-(iii)

If sentenced today, everything else being the same, the
"applicable guideline range under the Sentencing Guidelines"
(18 U.S.C. §3553(a)(4)(A)), would be 4-10 months as supported
by §1B1.10(b)(1), the "pertinent policy statement issued by
the Sentencing Commission" (Id. §3553(a)(4)(A)-(B) & (5)(A)).
The policy also says, in support of Arrieta's sentence being
reduced, that a reduction "is sufficient to achieve the purposes
of sentencing...." (USSG §1B1.10(D)). As such, the sentence
now commissioned by the Commission--4-10 months--is one that
would meet the purposes of sentencing, i.e. deterrence, protection,
seriousness, justice and punishment. Further, it's the sentencing
range from which every similarly situated defendant who comes
before this Court after Arrieta will now receive. See United
States v. Vanholten, Case 3:12-cr-00096-RBD-MCR (M.D. Fla.
Dec. 1, 2023) ("Section 3553(a) requires courts to 'impose
a sentence sufficient, but not greater than necessary,' to
provide adequate punishment and deterrence while also 'avoid[ing]
unwarranted sentence disparities among defendants with similar
records who have been found guilty of similar conduct.")

Regarding the factors of restitution and education, Arrieta
is currently employed by the Federal Bureau of Prisoners' (FBOP)
UNICOR textile factory in FCI Miami, in the coveted job of
a Sewing Machine Operator. (See Exhibit 1, UNICOR Industrial
Employment Action Report). His dual purpose for having sought
employment with UNICOR was to more quickly pay the Court assessment
fees owed from both Cases 1 & 2, totalling $2,400.00, and to
acquire trade skills in preparation for his eventual reentry

in society, skills he can use to secure meaningful employment.

Also, regarding education, Arrieta enrolled in FCI Miami's GED prep. program, committed to earning his GED. (See Exhibit 2, Inmate Education Data Transcript.) Toward this goal, he studies for four hours daily. And he's also currently on the waiting list for numerous First Step Act (FSA) programs.

Regarding the nature and circumstances of Arrieta's offense, Case 1 (alien smuggling) involved him working with a friend of his in an effort to help his sister, brother and mother, and his friend's wife and two young children, escape the terrible life conditions imposed by a corrupt Cuban dictatorship. When Arrieta's friend and he pulled the boat they piloted to the beach where they were to pick up their respective family members, they unexpectedly also found nearly 16 strangers on the beach, all of whom desperately climbed in the boat motivated by their own hopes for freedom. Though having not planned for the additional people, with reservation, he didn't want to risk being overrun, have his friend and him kicked off the boat and have his hopes for his family and him in America taken away. This fear was combined with a deep understanding of what the strangers were trying to get away from and to.

Importantly, Arrieta's actions weren't motivated by financial gain, but solely by the psychological pressures most people would experience when knowing that their family is suffering and wanting to do something, anything to help them. In hindsight, and with great remorse, he's fully aware now of having taken the worst possible approach to trying to save his family. (He

does not overlook the seriousness and risks associated with his criminal acts.)

Arrieta's motivations differentiate him from other offenders who are solely driven by financial gain, like "Coyotes" or Cartel members. Arrieta is neither of these.

And, regarding Case 2, his failure-to-appear case further differentiates Arrieta from other offenders, considering that, other than preventing the discharge of his imposed term of incarceration, he broke no other laws from November 5, 2002 (his ordered self-surrender date) to November 12, 2022 (his arrest date). This represents a total of nearly 20 years of him not being a threat to the community or any person, him having caused no harm to anyone beyond just existing.

Arrieta is truly remorseful, putting his remorse in action with his educational and work pursuits as investments in his personal rehabilitation and future. And, in addition to making strides to better himself while incarcerated, he recognizes and acknowledges the wrongfulness of his conduct and takes responsibility for his actions.

Regarding the remaining factors of Arrieta's history and characteristics, Cases 1 & 2 represent his only criminal conduct. Moreover, he's followed all prison rules and regulations, having received no negative incident reports of any kind.

Taking these factors together, Arrieta is not a danger to any other person or the community. See Guidelines Manual §1B1.13(a)(2)

16

AMENDMENT 821, PART B, SUBPART 1

In light of the retroactive application of Amendment 821, Part A, with "[o]ffenders with six or fewer criminal history points under subsections (a) through (d) [] no longer receive[ing] 'status points,'" §1B1.10, Application Note 8, this renders Arrieta a "zero-point offender." Consequently, textually Amendment 821, Part B, would call for further Court review to determine if a greater reduction under subpart 1 is warranted.

In the alternative, such review may be warranted anyway, in a case with Arrieta's rare case specifics, Case 2 having occurred after and its term ran consecutive to Case 1, the term for Case 1 having been undischarged at the time of Case 2's prosecution. Though a direct consequence of Arrieta's actions, or inaction, as the case may be--he failing to appear--Case 2 is not Case 1, as their respective Docket Numbers attest. In other words, he has one first-time instant offense (Case 1, alien smuggling) and a separate second-time instant offense (Case 2, failure to appear).

For Case 1 (Case No. 4:02-cr-10001-KMM), on October 3, 2002, the date of his sentencing, Arrieta was and arguably still is a first-time zero-point offender, though these terms are not textually interchangeable when applying applicable policy. He was sentenced to 60 months as a first-time offender, indicative of a base-offense level of 24 or 25; for a zero-point (Category I) offender, originally establishing his base offense level at either 51-63 months or 57-71 months, respectively.

Of Amendment 821,

Part B, subpart 1 created a new Chapter Four

17

guideline at §4C1.1 (adjustment for certain
zero-point offenders) to provide a decrease
of two levels from the offense level determined
under Chapters Two and Three for defendants
who did not receive any criminal history points
under Chapter Four, Part A and whose instant
offense did not involve specified aggravating
factors.

§1B1.10 Application Note 7.

The aggravating factors are provided as the following 10

criteria points that a defendant must meet:

(1) the defendant did not receive any criminal history points
from Chapter Four, Part A;

(2) the defendant did not receive an adjustment under §3A1.4
(Terrorism);

(3) the defendant did not use violence or credible threats
of violence in connection with the offense;

(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial
hardship;

(7) the defendant did not possess, receive, purchase, transport,
transfer, sell, or otherwise dispose of a firearm or other
dangerous weapon (or induce another participant to do so) in
connection with the offense;

(8) the instant offense of conviction is not covered by §2H1.1
(Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under §3A1.1
(Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious
Human Rights Offense); and

(10) the defendant did not receive an adjustment under §3B1.1
(Aggravating Role) and was not engaged in a continuing criminal
enterprise, as defined in 21 U.S.C. §848;

decrease the offense level determined under Chapters Two and
Three by 2 levels.

§4C1.1(a)(1)-(10)

18

None of these factors apply to Arrieta. At first blush it may appear that the disqualifying criteria point (1) applies. But, with retroactive application of Part B, subpart 1, of Amendment 821, for Arrieta's instant alien smuggling case, Case No. 4:02-cr-10001-KMM, he "did not receive any criminal history points from Chapter Four, Part A...." §1B1.10 Application Note 7. Consequently, for Case 1 he qualifies for a decrease of his offense level by 2 levels.

Accordingly, depending on his original base-offense level-- 25 or 24--he'd now be at an offense level of either 23 or 22, the sentencing ranges being 46-57 or 41-51 months, respectively. Since he received a 60-months term, this would represent a difference of either 14-19 months (for the low end), or 3-9 months (for the high end).

Considering the §3553(a) factors provided earlier, Arrieta would request for a reduction within the 14-19 months range.

CONCLUSION

WHEREFORE, for the foregoing, considering Amendment 821 and the §3553(a) factors together:

1) For Part A (status points), Arrieta respectfully requests that this Court resentence him to 4 months, the low end of the sentencing range for an offense-level 9, Category I offender. This would represent a reduction of 8 monhts, 1 day, in Case No. 4:03-cr-10030-KMM (Case 2); and/or

2) For Part B, subpart 1 (zero-point offenders), Arrieta requests that this Honorable Court resentence him to either

46 or 41 months, the low end of the respective sentencing ranges for an offense-level 25 or 24, Category I offender. This would represent a reduction of either 14 or 19 months, in Case No. 4:02-cr-10001-KMM.

With either one or both reductions, Arrieta will still have remaining on his imposed terms enough time to earn his GED and gain substantive work experience in the UNICOR factory, ensuring his preparation for a successful reentry and his lasting contribution to society.

Respectfully submitted,

Pedro Arrieta, pro se
Reg. No. 68215-004
FCI Miami Low
PO Box 779800
Miami, FL 33177

Date: _3/17/25_____

## CERTIFICATE OF SERVICE

I, Pedro Arrieta, Petitioner pro se, swear under penalty

of perjury, pursuant to 28 U.S.C. §1746, that on this 17

day of March 2025    I mailed a true and correct copy of the

foregoing Motion For Sentence Reduction Under 18 U.S.C. §3582(c)(2)

with exhibits via USPS, postage prepaid, to:

Alexandra D. Comolli, AUSA
Office of the United States Attorney
99 Northeast 4th Street, 6th Floor
Miami, FL 3312


_____
Pedro Arrieta, pro se

21

```
   MIAFT           *         INMATE EDUCATION DATA        *      03-13-2025
PAGE 001 OF 001 *                  TRANSCRIPT             *      09:54:31

REGISTER NO: 68215-004      NAME..: ARRIETA                  FUNC: PRT
FORMAT.....: TRANSCRIPT      RSP OF: MIA-MIAMI FCI

------------------------- EDUCATION INFORMATION -------------------------
FACL ASSIGNMENT DESCRIPTION                START DATE/TIME STOP DATE/TIME
MIA  ESL EXEMPT ESL NEED-PERMANENTLY EXEMPT 10-16-2023 1248 CURRENT
MIA  GED XN     EXEMPT GED NON-PROMOTABLE   10-16-2023 1250 CURRENT

--------------------------- EDUCATION COURSES ---------------------------
SUB-FACL    DESCRIPTION          START DATE  STOP DATE EVNT AC LV   HRS
MIA         GED SPANISH 12:30-2:00   10-16-2023 CURRENT
MIA         HEART DIEASE             02-18-2025 CURRENT
MIA         BRAIN HEALTH AS YOU AGE  08-19-2024 09-23-2024  P  C  P    5
MIA         LEGAL RESEARCH           04-02-2024 04-16-2024  P  C  P    8

--------------------------- HIGH TEST SCORES ---------------------------
TEST        SUBTEST        SCORE   TEST DATE    TEST FACL  FORM    STATE
GED 2014SP  SCIENCE        137.0   11-07-2024   MIA
            SOC STUDY      135.0   11-07-2024   MIA
SABE/2      MATH COMP        2.4   10-13-2023   MIA
            MATH CONC        3.1   10-13-2023   MIA
            READ COMP        3.5   10-13-2023   MIA
            VOCABULARY       9.2   10-13-2023   MIA




G0000     TRANSACTION SUCCESSFULLY COMPLETED
```

```
UNICOR INMATE EARNING STATEMENT      Pay Period: 02/28/2025  Pay Date: 03/08/2025
                                     INST:  39      FACTORY:   MIA1
REG/NAME: 68215004                   GRADE: GRADE4   GROUP:
          PEDRO ARRIETA                              CREW:   MIA DIR SEW A 1
```

|  | GROSS | - | TAXES | - | POST TAX DEDUCTIONS | = | NET PAY |
|---|---|---|---|---|---|---|---|
| Curr: | 88.33 | - |  | - |  | = | 88.33 |
| YTD: |  | - |  | - |  | = | 150.64 |

| EARNINGS | | RATE | HOURS | AMOUNT |
|---|---|---|---|---|
| 8010 | HOL | 0.46 | 7.00 | 3.22 |
| 8040 | VACPAID | 0.46 | 42.00 | 19.32 |
| 8052 | CTL | 0.00 | 35.00 | 0.00 |
| 8074 | LAYIN | 0.00 | 7.00 | 0.00 |
| Z002 | INV PW | | | 44.52 |
| Z003 | INV OTPW | | | 21.27 |

```
DATE COMPUTED
HIRE DATE        12/01/2023
VACATION DATE   12/01/2023
LONGEVITY MONTHS          15.00
UNICOR WORK START 12/01/2023
ACCRUED VAC HOURS      21.00
PREV. YRS VAC HOUR     42.00
UNPAID CALLOUT    42.00

STATUS 96

DEDUCTIONS/ADJUSTMENT
```

# Certificate of Completi

This is to certify that:

## *Pedro Arrieta*

*successfully completed*

### *FSA Brain Health as You Age: You can m Difference*

This 23rd day of September 2024



*D. Vega*
D. Vega, Wellness Coordinator

# Certificate of Completion

## This is to certify that:

Pedro Arrieta

## Has successfully completed the

Spanish Parenting Class - Phase 1
Spanish Parenting Class Phase 2 - Inside Out

## Requiring __16__ hours of Training

### In Witness Thereof the Undersigned

Given this __05__ day of ____June____ , two thousand _____

_____
FCI-Miami
Education Department

_____
C. De Jesus
Spanish Parenting Program



# ≈ Certificate of Achievement

This certifies that

Pedro Arrieta

## has satisfactorily completed

Legal Research

Consisting of __8__ Hours of Training

This certificate is hereby issued this __16__ day of __April__

_____
FCI-Miami
**Education Department**



R. Ama___
**ACE Program C___**